## Case No. 6,799.

### HOWLAND et al. v. MAXWELL.

[3 Blatchf. 146.] [1]

Circuit Court, S. D. New York. Dec., 1853.

CUSTOMS DUTIES—ENTRY—PENALTY FOR UNDERVALUATION—APPRAISAL.

1. Where an invoice of goods not purchased in a foreign market, but belonging to their producer, was entered at the custom-house by their consignee, and, before any action was taken to determine the value of the goods, a corrected invoice was given to the collector by the consignee; *Held*, that it was the duty of the collector to take the valuation in the corrected invoice as the entry valuation, and that it was illegal for him to impose a penalty, as for

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

undervaluation, because of the difference between the two invoices.

[Cited in Carnes v. Maxwell, Case No. 2,417; Schneider v. Barney, 6 Fed. 151.]

2. Where, under such circumstances, the appraisers, without any valuation of the goods, added to the first invoice prices, exactly the difference between the two invoices, and a penalty of 20 per cent., for undervaluation, was imposed, because such difference exceeded 10 per cent.: Held, that, under sections 16 and 17 of the act of August 30, 1842 (5 Stat. 563, 564), an actual appraisal of purchased goods, as of the time of purchase, must be made, to authorize the imposition of a penalty of 20 per cent. for undervaluation.

This was an action [by William E. Howland and others] brought in the supreme court of New York, to recover the following moneys exacted by the defendant [Hugh Maxwell] as collector of the port of New York, under color of the revenue laws, to wit: for weigher's fees, $21 17; for penalty, $483 60; total, $504 77; and interest thereon. The cause was removed into this court by certiorari. An invoice of sugars, dated Havana, March 15th, 1850, was entered on the 2d of April thereafter, at the customhouse, by the plaintiffs, as consignees thereof. Weigher's fees, to the amount of $21 17, were charged, and paid, under protest, on the 10th of May. On the 13th of April, before the goods had been appraised at the custom-house, the plaintiffs received from the owners of the sugars in Havana, a correct invoice, which was filed with the collector about the 17th of April, with a notice that the first invoice had been made out in the absence of the owner, by his agents, and that this one had been forwarded to the plaintiffs in correction of the former one, before the plaintiffs had made any communication to the owner on the subject; and the plaintiffs asked leave to amend the entry on the first invoice to correspond with the values set forth in the corrected one. The first invoice stated the prices of the sugars at 2 cents per pound; the second, at 3¼ cents. The collector refused to allow the amendment or correction, and handed the second invoice to the appraisers, who, without any valuation of the goods, wrote up the first invoice prices, by adding to them exactly the difference between the two invoices, and, this difference exceeding 10 per cent., the collector imposed an additional duty or penalty of 20 per cent. The plaintiff applied to the treasury department, requesting to have the proceeding rectified, and that they might be allowed to enter the goods on payment of legal duties upon the corrected invoice. This application was denied. On the 10th of May, they paid the duties and penalty imposed by the collector, under protest, in due form of law, against the exaction of the penalty. On the argument of the cause, the question respecting the weigher's fees was not pressed, and the case was put before the court upon the right of the collector, under the facts, to impose the additional duty of 20 per cent.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. The oath of the consignees upon the entry having made it their duty to make known to the collector the second invoice received by them in relation to the importation, and, that invoice having been filed by them in the custom-house before any action had been taken there, on the entry, to determine the value of the goods imported, the plaintiffs had the right, on a question of duties merely, to claim that the valuation of the importations should be made upon the corrected invoice, and not on the one first produced. Had the goods been seized for a fraudulent undervaluation, or had an appraisal been made upon the entry before the corrected invoice was produced, the question on this point might stand on different grounds.

Under sections 16 and 17 of the act of August 30, 1842 (5 Stat. 563, 564), an actual appraisal of purchased goods, as of the time of purchase, must be made at the custom-house, to authorize the levy of an extra or additional duty of 20 per cent., for an undervaluation in their invoice. In this case the importation was made prior to the act of March 3, 1851 (9 Stat. 629), and, upon the proofs, the goods were exported by the producer, and not by the purchaser in the foreign market. Judgment for the plaintiffs, for the penalty and interest thereon.